UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LAURIE E. ALLEN,

    Plaintiff,

v.

CALIFORNIA HIGHWAY PATROL, et al.,

    Defendants.

No. 2:13-cv-01821-MCE-EFB

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff in this case pursues various causes of action arising out of the in-custody death of Keith W. Allen ("Decedent"), to whom Plaintiff Laurie E. Allen ("Plaintiff") had been married. Shortly before this case was to be tried, Defendants filed a Motion for Summary Judgment, or in the alternative, a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). According to Defendants, Plaintiff was not actually married to the Decedent at the time of his death nor was she his putative spouse under California law. The Court submitted the Motion and subsequently determined that the issue of Plaintiff's standing, and more specifically the factual issue as to Plaintiff's status as a putative spouse, should be tried to the Court. Having held that hearing on February 6, 2018, and having considered the arguments of counsel, the evidence submitted and offered in Court, and the record as a whole, the Court now makes the

following findings of fact and conclusions of law.[1] Because the Court concludes Plaintiff was neither Decedent's legal or putative spouse at the time of his death, Defendants' Motion is GRANTED.

## FINDINGS OF FACT

1. On June 4, 1995, Plaintiff Laurie Allen, under the name of Laurie Elaine Golsch, was married to Michael Deragon in the City of Reno, Washoe County, Nevada.

2. Plaintiff contends that in early 2001, she completed what she believed to be paperwork to dissolve her marriage from Mr. Deragon with the assistance of an educator at the Placer County facility where she was staying at that time.

3. After Plaintiff completed paperwork to dissolve her marriage from Mr. Deragon in 2001, she understood that the educator at Placer County who was assisting her with the Petition would handle the filing and service of the Petition.

4. After Plaintiff completed paperwork to dissolve her marriage from Mr. Deragon in 2001 and gave the completed, signed forms to the educator at Placer County who was assisting her with the Petition, Plaintiff assumed she would be divorced from Mr. Deragon.

5. A marriage ceremony took place on September 16, 2001, between Plaintiff and Decedent in the City of Reno, Washoe County, Nevada.

6. In approximately late 2003 or early 2004, Plaintiff was surprised to learn from Mr. Deragon that her divorce from Mr. Deragon was not finalized.

7. On January 7, 2004, Plaintiff filed a Petition for Dissolution of her marriage to Mr. Deragon in Sacramento County Superior Court, Case No. 04-FL-00092.

///
///

---

[1] "To the extent that any of the Findings of Facts may be deemed Conclusions of Law, they also shall be considered conclusions. Likewise, to the extent that any of the Conclusions of Law may be deemed Findings of Fact, they shall be considered findings." United States v. Newmont USA Ltd., 2008 WL 4621566, *2 n.1 (E.D. Wash. Oct. 17, 2008) (citing Miller v. Fenton, 474 U.S. 104, 113-14 (1985) (noting the difficulty, at times, of distinguishing findings of facts from conclusions of law)).

1     8.     After Plaintiff filed for divorce from Mr. Deragon in 2004, which is Case No. 04-FL-00092 in the Sacramento County Superior Court, she served the filing constituting the Petition for Dissolution on Mr. Deragon.

9.     When Plaintiff received the executed proof of service back from the facility where she served Mr. Deragon with the Petition for Dissolution, she returned to the Sacramento County Superior Court, Family Law Courthouse and gave the proof of service to the clerk.

10.     In approximately March 2006, Plaintiff learned that she and Mr. Deragon were still married and that the divorce she filed in 2004 (Case No. 04-FL-00092 in the Sacramento County Superior Court) was not finalized due to a purported error by a court clerk.

11.     On March 9, 2006, Plaintiff filed a Petition for Nullity of Marriage as to her marriage to Mr. Allen (Sacramento County Superior Court Case No. 06-FL-01860) because she was purportedly informed by a family law clerk that she had to do so to effectuate the final dissolution of her marriage to Mr. Deragon.

3.     The basis for Plaintiff's petition to annul the marriage between herself and Decedent was "bigamous marriage."

12.     In the Petition for Nullity of Marriage as to her marriage to Decedent, Plaintiff requested that she be restored to her former name, Laurie Elaine Deragon.

13.     In her petition for annulment of her marriage to Decedent, Plaintiff declared under penalty of perjury that she and Decedent had separated on November 17, 2005.

14.     Plaintiff knew she could not be married to more than one man at a time.

15.     When Plaintiff and Decedent separated, she dated Craig Conry, a friend who had lived with Plaintiff and Decedent.

16.     Plaintiff had an intimate relationship with Mr. Conry and was living with him prior to Decedent's death.

17.     Decedent died on September 5, 2011.

18. Three days after Decedent's death, on September 8, 2011, ISU Investigator Tom Massetti and Investigator Galvez contacted Plaintiff at her home in Fair Oaks, California, as part of their investigation.

19. When Investigator Galvez told Plaintiff that they understood Decedent was not married at the time of his death, she stated that she and Decedent had been separated for years.

20. During Investigator Galvez's discussion with Plaintiff about the timeline and Decedent's whereabouts in the days before his death, Plaintiff informed Investigator Galvez that Decedent had been out on Sunday, the day before he died, and that she did not know where he was. Plaintiff then stated, "I was worried about Keith because his feet were cold and he had wanted me to baby him and take care of him like I used to, but I didn't want him to get really attached to me again, so I didn't."

21. During Investigator Galvez's interview with Plaintiff, she spontaneously stated that she had a fiancé, namely Craig Conry.

22. She indicated to investigators that she had left Decedent for Craig because Decedent was hurting her and that Craig felt terrible for coming between them.

23. Plaintiff could not credibly explain why or how she could have a fiancé if she honestly believed she was still married to Decedent.

24. Plaintiff's alleged fiancé, who she identified as "Craig" on September 8, 2011, was the same Craig Conry with whom she had an intimate relationship in 2005.

## CONCLUSIONS OF LAW

1. Whether Plaintiff has standing to pursue this action goes to the Court's subject matter jurisdiction. See Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1121-22 (9th Cir. 2010).

2. Federal courts are courts of limited jurisdiction, and are presumptively without jurisdiction over civil actions. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). The burden of establishing the contrary rests upon the party asserting jurisdiction. Id. Because subject matter jurisdiction involves a court's power to

hear a case, it can never be forfeited or waived. United States v. Cotton, 535 U.S. 625, 630 (2002). Accordingly, lack of subject matter jurisdiction may be raised by either party at any point during the litigation, through a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006). Lack of subject matter jurisdiction may also be raised by the district court sua sponte. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999). Indeed, "courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party." Arbaugh, 546 U.S. at 514; see Fed. R. Civ. P. 12(h)(3) (requiring the court to dismiss the action if subject matter jurisdiction is lacking).

3. There are two types of motions to dismiss for lack of subject matter jurisdiction: a facial attack, and a factual attack. Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979). Thus, a party may either make an attack on the allegations of jurisdiction contained in the nonmoving party's complaint, or may challenge the existence of subject matter jurisdiction in fact, despite the formal sufficiency of the pleadings. Id.

4. When a party makes a facial attack on a complaint, the attack is unaccompanied by supporting evidence, and it challenges jurisdiction based solely on the pleadings. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). If the motion to dismiss constitutes a facial attack, the Court must consider the factual allegations of the complaint to be true, and determine whether they establish subject matter jurisdiction. Savage v. Glendale High Union Sch. Dist. No. 205, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003). In the case of a facial attack, the motion to dismiss is granted only if the nonmoving party fails to allege an element necessary for subject matter jurisdiction. Id.

5. However, in the case of a factual attack, district courts "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Safe Air for Everyone, 373 F.3d at 1039. In such a case, "[n]o presumptive truthfulness attaches to plaintiff's allegations." Thornill, 594 F.2d at 733

5

(internal citation omitted). The party opposing the motion has the burden of proving that subject matter jurisdiction does exist, and must present any necessary evidence to satisfy this burden. St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989). If the plaintiff's allegations of jurisdictional facts are challenged by the adversary in the appropriate manner, the plaintiff cannot rest on the mere assertion that factual issues may exist. Trentacosta v. Frontier Pac. Aircraft Ind., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987) (quoting Exch. Nat'l Bank of Chi. v. Touche Ross & Co., 544 F.2d 1126, 1131 (2d Cir. 1976)). Furthermore, the district court may review any evidence necessary, including affidavits and testimony, in order to determine whether subject matter jurisdiction exists. McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988); Thornhill, 594 F.2d at 733. If the nonmoving party fails to meet its burden and the court determines that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

6. "In § 1983 actions . . . the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action." Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 369 (9th Cir. 1998) (citing 42 U.S.C. § 1988(a)). "The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action." Id.

7. "In California, wrongful death actions are statutory in origin and exist only so far and in favor of such person as the legislative power may declare." Ceja v. Rudolph & Sletten, Inc., 56 Cal. 4th 1113, 1118 (2013) (internal quotation marks and citations omitted). Among those permitted to sue are spouses and putative spouses. Cal. Civ. Code 377.60(a), (b). "A trial court's finding regarding putative spouse status will be upheld on appeal if supported by substantial evidence." Ceja, 56 Cal. 4th at 1119.

///

8.      "Section 377.60(b) defines 'putative spouse' to mean 'the surviving spouse of a void or voidable marriage who is found by the court to have believed in good faith that the marriage to the decedent was valid.'" Id. at 1119. "[T]he good faith inquiry is purely subjective and evaluates the state of mind of the alleged putative spouse, and that the reasonableness of the claimed belief is properly considered as part of the totality of the circumstances in determining whether the belief was genuinely and honestly held." Id. at 1120.

9.      Plaintiff was not Decedent's legal spouse. In fact, given the clarity of this conclusion, Plaintiff does not argue otherwise. Her marriage to Michael Deragon had not been legally dissolved prior to her attempted marriage to Decedent. As such, the second marriage was invalid.

10.     Nor was Plaintiff Decedent's putative spouse. This is because Plaintiff knew from Mr. Deragon as far back as 2003 or 2004 that they were still married. At that point, she knew her marriage to Decedent had not been legally effectuated because she was aware you could not be married to more than one man at a time. Moreover, in 2006, Plaintiff expressly acknowledged that her marriage to Decedent was bigamous when she filed her petition for annulment. To be clear, Plaintiff was unequivocal in her testimony that she knew she could only be married to one man at a time and thus she had to have known she could not have legally married Decedent until her divorce from Mr. Deragon was final. The Court thus concludes that Plaintiff subjectively believed she was not legally married to Decedent. Not only did Plaintiff testify she never received any confirmation from any court that her marriage to Mr. Deragon had been formally dissolved prior to marrying Decedent, but the Court's conclusion is further supported by the fact that shortly after Decedent's death, Plaintiff indicated to the investigating officer that she had a fiancé other than Decedent. The Court questioned Plaintiff at length as to how she could have a fiancé if she believed she was still married to Decedent, and she was unable to offer a credible explanation. Plaintiff thus lacks standing to pursue the claims set forth in this action.

11. For the same reasons, (e.g., given Plaintiff's lack of any recent relationship with Decedent, her long-standing and intimate relationship with another man, and her knowledge that her marriage to Decedent had never been valid) Plaintiff has not shown an intimate relationship entitling her to pursue a Fourteenth Amendment due process claim on her own behalf.

IT IS SO ORDERED.

Dated: July 30, 2018

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE